## LOIS POINSET and URICH POINSET v. JOHN NEWBOLD.

Court of Chancery. New Castle. August, 1817.

*Ridgely's Notebook I, 171.*

*McLane* reads depositions for complainants. . . .

April 14, 1810, John Newbold to Lois Poinset for sundry vendue notes payable in three and six months amounting to $441.90, on account of balance due also $260.00 in cash.

April 16, 1816, receipt, John Newbold to Urich Poinset for Welsh and Egbert's order in his favor drawn on Masden and Bunker, payable thirty days after date for $500 which, when paid, will be on account of his bond.

The accounts of John Newbold against Thomas Poinset beginning May 18, 1802, and ending July 10, 1807. Balance, $601.71. Also Newbold's account, Lois Poinset beginning May 30, 1807, and ending April 14, 1810, amounting to balance, $415.94. Note: credit seems to be given for the receipt of notes and cash. April 14, 1810, amounting altogether to $701.90. We claim repairs of farm taken out of Poinset's hands and vested to others. September 2, 1805, letter John Newbold to Thomas Poinset agreeing to reimburse improvements if he (Poinset) did not stay. March 8, 1806, letter J. Newbold to Thomas Poinset about carting wood, to be compensated. April 10, 1805, letter J. Newbold to Thomas Poinset to cart wood. June 27, 1805, letter J. Newbold to Thomas Poinset that he, Newbold, had left money to pay taxes. September 15, 1803, letter J. Newbold to Thomas Poinset acknowledging receipt of $160 (credited in account).

*Vandyke* reads depositions for defendant:

Clayton Earle of the City of Philadelphia.

James Stephenson, 48 years.

Peter Pettit.

Edward Roche. One bond given in 1810, lost. Lost bond was given October, 1810, another bond given April 29, 1811. Lost bond was afterwards found and cancelled.

April 29, 1811, bond, Urich Poinset to John Newbold. Debt, $1023.9. This is a special contract, a bottomry bond. Receipt, April 5, 1811, Urich Poinset to John Newbold for $20 which he promised to pay. April 28, 1811, Urich Poinset his order in favor Alexander Davis for $120, drawn on John Newbold, paid.

October 29, 1803, letter, John Newbold to Thomas Poinset, exhibited by complainant, read by defendant. April 5, 1803, letter, John Newbold to Thomas Poinset, exhibited by complainant, read by defendant. June 20, 1805, letter John Newbold to Thomas Poinset exhibited by complainant, read by defendant.

John Newbold proves his book of accounts. Ledger, page 24, account of Lois Poinset.

*McLane.* First, repairs and improvements are not allowed. Second, carting wood and cutting, not credited, worth $1.50. Mistakes in accounts. Some no vouchers. Cash charges. Lois Poinset has a right to investigate this account. Nothing will bar her. If she can show a clear mistake, she can compel Newbold to account with her. No account was ever made with Lois Poinset. Since he rendered his account, he has charged new matter. He did not give her credit for the $701.90, though he has since entered it, there is no settled account.

*Vandyke* for defendant. Urich and Lois did unite on the farm. Out of the funds of the estate, he built a vessel. He is connected with the accounts. He builds a vessel. A part of the money secured by bond was for money advanced for building the vessel. They can only surcharge and falsify. As to hauling wood and quantity, that is settled and supposition of witnesses is not enough to question or unsettle the account. So as to clearing. Settlement did take place, which closed the case. Debt obtained by duress. 2 Pow.Con. 163, 164; bargains by duress, or oppressively made, may be confirmed by subsequent acts. Here there are three periods at which this act was confirmed: first, giving a bond in absence of Newbold; second, he gave a second bond, first being lost; third, he pays $500 of this bond.

*McLane.* This case differs from the case of duress. On second bond duress ceases; the second bond given freely; it is party's voluntary act. Here bond was given on representation of party that a balance existed; that balance not existing, second bond is no better than the first! 1 Fon.Eq. 14, 15; Court of equity corrects errors and detects fraud in account. Stated 2 Atk. 119, 2 Atk. 112. Party may surcharge and falsify. The bill states many charges unjust and untrue. Charges accounts unfounded as follows: wheat, taxes, half price of cattle sold, act twice charged, cash paid, no credit for cows etc., and other instances. Here we have surcharged and falsified. We have specified the articles. Proof as to wood, Poinset authorized to cut and cart. As to improvements, Newbold's letters. Poinset removed. This is an error. No credit for improvements. No settlement with Thomas Poinset. He died, account unsettled. Balance against Thomas is carried to Lois. This account open until she left the farm. 2 Pow.Con. 196, an agreement may be set aside if the party misconceive.

*Vandyke* for defendant. They showed that T. Poinset was bound to keep accounts, and render them. Defendants could make no account but from the accounts of complainants and their intestate. The minutiae of the accounts do not rest with defendant. Plaintiff shows by his bill that there was some examina-

tion of the accounts prior to the execution of the bond. Balance claimed by Newbold was acquiesced in by complainant. Bond is given on the principle of a settlement. A settlement derived from the knowledge of each party. Each had a part of the accounts to keep. No fraud is alleged, no duress. They cannot question the account but on plain errors in the account, and plaintiff must satisfactorily prove the mistakes set out in his bill. They must specify the particular item. Divers cash items is not enough, they must lay their hands on the very charge or item.

THE CHANCELLOR. The complainant may surcharge and falsify, but the *onus probandi* rests on him. This *onus probandi* will not be discharged or performed by general surmise or conjecture of witnesses; there must be direct proof to satisfy the Court that he has either charged articles improperly or omitted credits to which the party is entitled. No such proof is here given. The improvements which it is alleged the complainants, or their father, T. Poinsett, made are not properly made out. There is Newbold's letter promising to pay for improvements, and Stephenson's testimony that Poinset cleared and grubbed about forty acres, and that this land was afterwards let to other persons. But the exact quantity of land cleared is not proved; but more especially the value. Was this clearing and grubbing worth one dollar or five or ten per acre? What was the nature of this clearing and grubbing? Besides, the Poinset's perfectly knew of this work, if it was done. They produced here Newbold's letter, and consequently had entire knowledge when the bond was given of everything touching this improvement. At no rate can I fix upon any value or quantity. Therefore the party here fails.